**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

BILL POINDEXTER,                          )
                                          )
        Plaintiff,                    )
                                          )
vs.                                       )
                                          )
                                          ) CIV-06-453-S
                                          )
THE BOARD OF COUNTY COMMISSIONERS         )
of the COUNTY OF SEQUOYAH, STATE OF       )
OKLAHOMA, and MIKE HUFF, in his           )
individual capacity,                      )
                                          )
        Defendants.                   )

## ORDER

Before the court for its consideration are motions for summary judgment filed by the defendants Mike Huff and the Board of County Commissioners of the County of Sequoyah, State of Oklahoma. The court grants the motions for the following reasons.

### (A) FINDINGS OF FACT

Plaintiff was hired as a road crew member for District 3 of the Board of County Commissioners for Sequoyah County in 1996. On January 4, 1999, Cleon Harrell was elected District 3 Commissioner for the Board of County Commissioners for Sequoyah County. Commissioner Harrell appointed plaintiff to the position of Road Foreman in March 1999. Road Foreman duties include supervising all the men employed by District 3, all safety issues and safety training, all project assignments and supervision, as well as acting as an ambassador to the community on behalf of the

1

Commissioner. The Road Foreman supervises all District 3 employees, as well as all the inmates and prisoners who are assigned to work for District 3.  The Road Foreman can terminate employees for cause. The Road Foreman also does the work of the County Commissioner if he is absent.  Commissioner Harrell left office on December 31, 2005.  During that time frame, plaintiff operated the district in the absence of the Commissioner. The other two Commissioners watched over plaintiff's operations.  As Road Foreman the plaintiff spent county money to purchase materials or supplies, as well as to perform maintenance on equipment.  When plaintiff had large expenditures he would consult with Commissioner Harrell, but he felt that he did not have to do that.  He said he consulted the Commissioner so they would both be on the same page.  The Road Foreman dealt with the public on behalf of the Commissioner.  He handled the phone calls and complaints from the citizens.  As an employee of District 3, plaintiff understood that he served at the pleasure of the Commissioner and could be fired for any reason that was not unlawful.

In approximately July 2005, defendant Huff contacted plaintiff and inquired as to whether plaintiff would be interested in being Road Foreman for him if he obtained the District 3 Commissioner office. Plaintiff's initial response was that he supported Harrell one-hundred percent and would not say a word against Harrell. During the 2005 election, plaintiff actively campaigned for Harrell. During this conversation, defendant Huff never asked the plaintiff to campaign against Harrell.  In fact, defendant Huff indicated that if Harrell ran for re-election he probably would not run.  Plaintiff again stated that he fully supported Harrell but if defendant Huff did win the election he would be interested in being his Road Foreman.

In October 2005, Commissioner Harrell announced he was resigning from the office effective December 31, 2005. On or about November 3, 2005, plaintiff ran an advertisement in the local newspaper announcing his candidacy for District 3 County Commissioner for Sequoyah County. Plaintiff did very little campaigning before he decided to drop out of the race. In fact, plaintiff never did actually file for the District 3 seat because he was having family problems. Plaintiff never did formally announce his intention not to run for the vacant seat either.

Defendant Huff was sworn in as District 3 Commissioner on March 13, 2006. Defendant Huff appointed Ed Watts to be his Road Foreman. Defendant Huff offered plaintiff the position of a general crew member at top pay. Plaintiff then took two weeks of vacation to decide if he wanted to accept the position offered. After two weeks he decided to decline the offer of the position. No one ever told him that he was being removed from the Road Foreman position due to his association with Harrell. In fact, defendant Huff had no idea during the election which candidate plaintiff was supporting.

### (B) STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ©; See also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party

3

then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it} carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendants' motions.

**I. First Amendment Claim**

Plaintiff has alleged his First Amendment rights were violated by defendants when he was demoted because (1) he expressed political support for incumbent Commissioner Harrell; (2) plaintiff's placement of an advertisement in the newspaper

4

announcing his own candidacy; (3) plaintiff's campaign activity of posting signs, going door-to-door, and passing out cards for J.W. Fleetwood in the general election and Charles Miller in the primary election; (4) the fact Huff was aware of plaintiff's political speech; (5) the fact Huff solely based his decision to discharge plaintiff on an unsupported claim plaintiff told Huff he "did not want the job"; (6) the fact Huff terminated plaintiff the day he took office; (7) the fact Huff, when terminating plaintiff threatened "don't ever try to undermine me and ole Ed"; (8) at the time of his termination, plaintiff had a clean record of performance with the County and had been commended in a recent newspaper article by Commissioners for Districts 1 and 2 mere days before his termination; (9) the fact Watts politically supported Huff and was appointed Road Foreman.

To determine if defendants have violated plaintiff's First Amendment rights, this court must apply the <u>Pickering</u> test. The <u>Pickering</u> test requires the court to determine as questions of law if the speech in question involves a matter of public concern and if so, the court must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace. If the employee prevails on those two questions, the court must proceed to the remaining two steps, which are questions of fact. The employee must show the speech was a substantial factor driving the challenged governmental action. If the employee succeeds on that point, the employer must show that it would have taken the same action against the employee even in the absence of the protected speech. <u>Jantzen v. Hawkins</u>, 188 F.3d 1247, 1257 (10th Cir. 1999).

This court must first determine if plaintiff's speech involved

5

a matter of public concern. Matters of public concern are those "of interest to the community, whether for social, political or other reasons." Connick v. Myers, 461 U.S. 138, 146 (1983). In the case at bar, plaintiff was speaking on a matter of public concern since he was speaking about either his election to County Commissioner or another person's election. The court finds plaintiff's speech is clearly a matter of public concern.

Next the court must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace. "In balancing the employee's interest in expression against the government's interest in efficiency, a court must consider 'the manner, time, and place of the employee's expression' as well as the events leading up to it." Rankin v. McPherson, 483 U.S. 378, 388 (1987).

> In considering time, place and manner of the speech, the Tenth Circuit Court of Appeals has considered whether the employee used "less disruptive internal channels, rather than going outside the city administration." Conaway v. Smith, 853 F.2d, 789, 798 (10th Cir. 1988). *See also* Johnsen v. Independent School District No. 3, 891 F.2d 1485, 1494 (10th Cir. 1989)(noting that the court should consider whether the employee "used internal complaint procedures" and finding that the "plaintiff's decision to contact outside agencies prior to using the complaint mechanism of the school was unnecessarily disruptive because there was no indication that their internal mechanism would not be sufficient."). Lytle v. City of Haysville, Kansas, 138 F.3d 857, 865 (10th Cir. 1998).

The court finds the time, place and manner of plaintiff's speech appears to be appropriate.

The court must next determine whether the speech in question was a substantial motivating factor in the plaintiff's demotion.

The court finds plaintiff has no evidence that it was. When asked what his factual basis is for the fact that he was demoted because of his political association with Commissioner Harrell he stated "the fact that I am no longer employed." He said he believed he was terminated for his support of other Commissioners because of coffee shop gossip, but yet he could not name or produce one witness that would testify to the fact that Commissioner Huff terminated him because of his political activities. Plaintiff's mere assumptions are insufficient. In order to survive a motion for summary judgment, plaintiff need only present evidence from which a jury might return a verdict in his favor. If he is able to do this he presents an issue for trial. However, a mere scintilla of evidence will not be sufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252- 257 (1986). Plaintiff has simply failed to produce any evidence in this case. He has failed to come forward with one shred of evidence that a jury could possibly return a verdict in his favor. His mere assumptions based on coffee shop gossip are insufficient. Accordingly, the court finds the plaintiff has failed to establish that his political activity was a substantial motivating factor in his demotion from Road Foreman to general road crew member. Thus, the court grants the defendants Huff and Board of County Commissioners of the County of Sequoyah, State of Oklahoma's motions for summary judgment on plaintiff's First Amendment claim regarding his free speech.

## II. POLITICAL ASSOCIATION CLAIM

Plaintiff has alleged that his political association with other Commissioner candidates was a substantial or motivating factor in Huff's decision to terminate his employment. He bases this claim on the following facts (1) the fact, in July 2005, Huff called plaintiff to solicit plaintiff's political support and

plaintiff declined to lend political support to Huff, specifically stating "I am for Cleon Harrell 100%...I will never say a word against Harrell.", Huff said plaintiff would nevertheless be his foreman if he was elected; (2) the fact plaintiff believed Harrell intended to retain his position; (3) the fact, in August 2005, plaintiff learned Huff had enlisted his friend, Ed Watts, to be his foreman; (4) the fact Ed Watts agreed to lend his political support to and endorse Huff in the campaign; (5) the fact Huff bases his decision to terminate plaintiff on an unsupported claim plaintiff told Huff he "did not want the job"; (6) next, the fact plaintiff openly aligned himself and associated with two different candidates opposing Huff, Charles Miller and J.W. Fleetwood; (7) the fact Huff terminated plaintiff the day he took office, immediately following his swearing in; (8) the fact Huff, when terminating plaintiff threatened "don't ever try to undermine me and ole Ed"; (9) at the time of his termination, plaintiff had a clean record of performance with the County and had been commended in a recent newspaper article by Commissioners for Districts 1 and 2 mere days before his termination.

In order for plaintiff to prevail on his political association claim, he must establish that he was demoted solely for the reason that he was not affiliated with Commissioner Huff. He must show that his demotion was substantially motivated by political affiliation and the job of Road Foremen does not require political allegiance. Brown v. Reardon, 770 F.2d 896, 899 (10th Cir. 1985); Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1451 (10th Cir. 1997) and LaRou v. Ridlon, 98 F.3d 659, 661 (10th Cir, 1996). Again, the evidence is completely absent establishing that plaintiff was demoted from Road Foreman to road crew because of political associations. He can neither produce one witness nor one shred of evidence other than the fact that he is no longer employed

8

with District 3 to show that his termination was a result of political associations.  Further, if plaintiff is alleging he was terminated because he chose to run, this claim would also fail because "The right to political affiliation does not encompass the mere right to affiliate with oneself..." <u>Jantzen v Hawkins</u>, 188 F.3d 1247, 1252 (10th Cir. 1999).  As the non-moving party faced with motions for summary judgment, it is up to the plaintiff to go beyond the pleadings and designate specific facts in order to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment. <u>McKnight v. Kimberly Clark Corporation</u>, 149 F.3d 1125, 1128 (10th Cir. 1998). Plaintiff has failed to establish an element essential to his case. Plaintiff simply has no evidence other than his assumptions. Assumptions and speculation are insufficient to survive summary judgment.  Plaintiff needs specific facts to support his claim.  See <u>Phillips v. Calhoun</u>, 956 F.2d 949, 951 n. 3 (10th Cir. 1992)("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") and <u>Panis v. Mission Hills Bank</u>, 60 F.3d 1486, 1490 (10th Cir. 1995)("To survive summary judgment, the non-moving party may not rest upon the allegations or denials of his pleadings, but must set forth specific facts through admissible evidence showing there is a genuine issue for trial.").

The court also finds the job of Road Foreman requires political loyalty.  The Tenth Circuit has stated "To determine whether political loyalty is an appropriate requirement, we must analyze 'the nature of the employee's duties and responsibilities....we must focus on the inherent powers of the positions and the actual duties performed.'" <u>Jantzen</u> at 1253.  In the case at bar, plaintiff as Road Foreman oversaw all the specifics of the projects done in District 3.  He managed the

9

crews, ordered the supplies, made project assignments and supervision, set guidelines for doing specific jobs, and was also a representative on behalf of the Commissioner to the community. He also had the authority to spend county funds for materials and repairs. It appears that he had many of the same duties as the Commissioner. He was the Commissioner's public representative. The court finds the duties and responsibilities of Road Foreman required political loyalty. Thus, even if plaintiff could establish that his demotion was based on a perception that plaintiff did not support him in his bid for District 3 Commissioner, defendant Huff did not violate plaintiff's constitutional rights. Accordingly, the plaintiff's political association claim must also fail.

It is undisputed that plaintiff, as an employee of the county, was an employee at will and could be fired for any reason as long as it did not violate the law. There has been no evidence presented that plaintiff's termination violated any federal law. Accordingly, the defendants' motions for summary judgment are granted as to plaintiff's political association claim.

### III. QUALIFIED IMMUNITY

The defendant Mike Huff has also been sued in his individual capacity. However, they could be immune from liability if they did not violate a "clearly established, statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982). The affirmative defense of qualified immunity is available to all government officials. Harlow at 807-808. This immunity is an immunity from suit and not merely a defense to liability. Pueblo Neighborhood Health Centers

v. Losavio, 847 F.2d 642, 644 (10th Cir. 1988). The question of whether a defendant is entitled to qualified immunity is a legal question for the court. Pueblo Neighborhood Health Centers at 646. The test the court must apply is an objective one which inquires into the objective reasonableness of the official's actions. Harlow at 818. Government officials performing discretionary functions will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known". Id. at 818. In this context, the law to be examined is the law existing at the time of the official's actions. Id.

It is the plaintiff's burden to show that the law was clearly established. Lutz v. Weld County School Dist., 784 F.2d 340, 342-343 (10th Cir. 1986) and Coen v. Runner, 854 F.2d 374, 377 (10th Cir. 1988). This Circuit has stated "the test of what is 'clearly established law' should be determined in a particularized sense, that is, that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'". Garrett v. Rader, 831 F.2d 202, 204 (10th Cir. 1987), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987). The rule for evaluating the factual correspondence between the established law and the case at hand, is one "requiring some but not precise factual correspondence and demanding that officials apply general, well-developed legal principles". Garcia v. Miera, 817 F.2d 650, 657 (10th Cir. 1987), cert. denied, 485 U.S. 959 (1988). Plaintiff must establish the defendants were deliberately indifferent to plaintiff's rights by knowing the risk to plaintiff and knowingly disregarding that risk. Lewis v. Richards, 107 F.3d 549, 552 (7th Cir. 1997).

Based upon the previous ruling of the court that the

11

plaintiff has failed to establish a First Amendment violation, the court finds that plaintiff has failed to show the defendant Mike Huff's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. Thus, the court finds the defendant Mike Huff is entitled to qualified immunity in that their conduct did not violate plaintiff's constitutional rights. <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985). Accordingly, the court grants the defendant's motion for summary judgment in his individual capacity as it relates to the issue of qualified immunity.

**IV. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEQUOYAH, STATE OF OKLAHOMA**

Because of the finding of no constitutional violations by defendant Huff, the court will not specifically address the issues raised in the Board's motion for summary judgment.

**CONCLUSION**

The court grants the defendants' motions for summary judgment on plaintiff's First Amendment claims and grants the motion for summary judgment on the issue of qualified immunity as to the defendant Mike Huff.

**IT IS SO ORDERED** this 17th day of August, 2007.

Frank H. Seay
United States District Judge